[Civ. No. 10597. Second Appellate District, Division One.—October 31, 1936.]

THE PEOPLE, etc., Appellant, v. SOUTHERN PACIFIC RAILROAD COMPANY (a Corporation) et al., Defendants; HORTENSIA M. ROMERO et al., Respondents.

U. S. Webb, Attorney-General, John O. Palstine, Deputy Attorney-General, C. C. Carleton and C. R. Montgomery for Appellant.

Tanner, Odell & Taft for Respondents.

THE COURT.—Upon rehearing, granted to enable us to consider more fully the question of jurisdiction involved

in this case, we have listened to oral arguments and have examined carefully the authorities cited in additional briefs that have been filed. But our conclusions are unchanged, and, accordingly, we adopt our original opinion, as written by Mr. Justice *Pro Tempore* Desmond, as part of this opinion, adding certain comments at the conclusion thereof. The original opinion is as follows:

"This is an appeal by the State of California, acting through its Department of Public Works, from a judgment rendered in favor of the heirs of Marquez, awarding damages for land or interests taken for highway purposes, at the point where Santa Monica Canyon comes down to the Pacific Ocean. Appellant also asks us, in considering this appeal, to review the action of the trial court in denying its motion to dismiss the case as to these heirs. This matter we shall discuss first.

"The motion to dismiss was grounded upon section 583, Code of Civil Procedure (which to us seems inapplicable to the facts of this case) and upon section 581a, Code of Civil Procedure, which, so far as is pertinent, reads as follows: 'No action heretofore or hereafter commenced shall be further prosecuted, and no further proceedings shall be had therein, and all actions heretofore or hereafter commenced must (shall)\* be dismissed by the court in which the same shall have been commenced, on its own motion, or on motion of any party interested therein, whether named in the complaint as a party or not, unless summons shall have (been)\* issued within one year, and all such actions must (shall)\* be in like manner dismissed, unless the summons shall be served and return thereon made within three years after the commencement of said action. But all such actions may be prosecuted, if appearance has been made by the defendant or defendants, within said three years in the same manner as if summons had been issued and served; provided,' etc. (Note: Quotation where marked with asterisk (\*) refers to alternative language used in earlier statutes.)

"This action was filed in 1922, joining as defendants various railroads and other corporations, together with R. C. Gillis, Maria Antonia Oliverez de Marquez, as executor of the estate of Bonifacio Marquez, deceased, John Doe, as

executor of the estate of Pascual Marquez, deceased, and several fictitiously named individuals. So far as the record discloses, no return was made of any summons, nor was any summons ever issued. However, shortly after the suit was brought, an answer was filed in behalf of all the corporations, except Santa Monica Land and Water Company, and that corporation and R. C. Gillis joined in a stipulation entered into by the state and the answering defendants settling their interests. By this stipulation, the defendants, who answered, agreed that condemnation of the land desired for a highway might be made conditioned upon the state's meeting the cost of moving a railway, then located on the condemned strip, to land immediately adjoining; also, upon the establishment and recognition of certain excepted and reserved rights and easements for railroad purposes. It does not appear in the stipulation that any moneys were to be paid to any of these stipulating defendants for the condemnation, but we note in the brief of respondents the statement, unchallenged in appellant's reply brief, that a sum exceeding $13,000 was paid the Southern Pacific Company. The matters covered by the stipulation were embodied in an interlocutory judgment of condemnation entered in 1923, final judgment following in 1925.

"Although, as has been noted, certain members of the Marquez family were named as defendants in this proceeding, neither those named nor any other members of that family were parties to the stipulation, nor do we find any mention of their rights or interests there or in the judgments, except by way of description of land formerly belonging to their ancestor. It may be remarked, too, that no motion to dismiss the action as to any defendant was made when condemnation took place, the first motion of that character being directed against these respondents after they voluntarily appeared and filed their answer on August 13, 1934, except respondent Slert, who filed his answer May 27, 1935. These answers alleged that, although summons was issued in the action, it was never served on any of the respondents or their ancestors, and set up ownership in the various respondents of undivided interests in a 100-foot strip of land, of which 60 feet had been condemned and dedicated to use as a public highway by the decree and

judgment of 1925. This 100-foot strip, we learn from an examination of the transcript, had been conveyed by deed dated October 27, 1892, to the Pacific Improvement Company (whose interests were later acquired by the early answering defendants) by Maria Antonia Oliverez de Marquez, administratrix of the estate of Bonifacio Marquez, deceased. It contains the following provision:

" 'This deed is made upon the express condition that the land hereby conveyed shall be used by the party of the second part, its successors or assigns, for railroad purposes, and in the event that said party of the second part, its successors or assigns, shall fail so to use said land for railroad purposes then and thereupon said land shall revert to and become vested in the heirs of said Bonifacio Marquez, deceased.' A railroad was constructed on the land so conveyed at or about the time the deed issued, and trains or cars were operated continuously thereon from December 31, 1892, until November 22, 1933, when its use as a railway was discontinued under authority of the railroad commission. During the period following condemnation of the 60-foot strip for highway purposes, the railroad was operated on the remaining 40 feet of the land originally conveyed by the deed of Marquez's administratrix. The respondents claimed to be entitled to compensation in this case as part owners of the reversionary right created by that deed, a claim which was recognized by the judgment entered in their favor, from which this appeal has been taken.

■ "We return now to our inquiry as to whether error arose in the denial of the motion to dismiss under section 581a, Code of Civil Procedure. If so, the judgment thereafter entered must be vacated as being void for lack of jurisdiction, and the case dismissed.

"The groundwork of section 581a was subdivision 7 of section 581, added to the Code of Civil Procedure in 1889 (Stats. 1889, p. 398). In 1897 subdivision 7 was amplified in its terms (see Stats. 1897, p. 98) to read, so far as here pertinent, like the present section 581a, Code of Civil Procedure, except that, following the language of 1889, the word 'shall' appeared in the 1897 section, where now 'must' is written, indicated by our parenthetical entries in section

581a, above quoted. However, this change from 'shall' to 'must' appeared earlier than 1907, when the present section 581a was adopted. (Stats. 1907, p. 712.) It was first made when section 582 was added to the Code of Civil Procedure by the legislature in 1901 (Stats. 1901, p. 144), that section 582 becoming section 581a six years later. Although prior to 1901 the important word in this section was 'shall' and not 'must', the provisions even then were considered mandatory, for in '1896 we find Mr. Justice Temple saying in *Vrooman* v. *Li Po Tai*, 113 Cal. 302, at page 305 [45 Pac. 470]: 'This provision is very sweeping, and is expressly made applicable to pending suits. It is prohibitory, otherwise it would have no force at all. The courts were already authorized and required to dismiss suits upon motion where there had been culpable failure to prosecute. To hold this statute directory would, therefore, be to repeal it. Then the language could hardly indicate more plainly the intent that it shall be mandatory. Besides being absolute in form, it contains a prohibitory clause— "and no further proceedings shall be had therein". Such a negative cannot be, and never has been, considered as directory merely.'

"It is true that in a decision rendered three years later, *Cooper* v. *Gordon*, 1899, 125 Cal. 296 [57 Pac. 1006], where within the three-year period, a stipulation for judgment had been entered into, this same judge expressed the opinion that, notwithstanding the limitations imposed by the statute, it would be proper to proceed in a cause where voluntary appearance was made subsequent to a three-year period dating from the institution of the action, but it will be noted that to make such a course possible, the consent of all parties would be required, in the opinion of the learned justice. He says, page 300, 'Could the court then properly dismiss the action *against the protest of all parties?*', and again at page 301, 'But, if the *parties* consent that it is a case pending of which the court has jurisdiction, there is no excuse for not trying it.' (Italics ours.) So, also, we note in *Harrington* v. *Superior Court*, 194 Cal. 185, at page 188 [228 Pac. 15], the court relies upon the following rule: ' "where the jurisdiction of the court as to the *subject matter* has been limited by the constitution or the statute the consent of

parties cannot confer jurisdiction. But when the limit regards *certain persons, they* may, if competent, waive their privilege, and this will give the court jurisdiction.'' (*Gray* v. *Hawes;* 8 Cal. 562, 568. See *Bates* v. *Gage,* 40 Cal. 183.)' But in the instant case, the parties did not consent that the cause should be heard; on the contrary, plaintiff objected and still objects. The consent upon which action may proceed, after the lapse of three years, necessarily must be joint consent of the parties, as stated in *Cooper* v. *Gordon, supra,* because of the language of the section, dictating, as it does, a dismissal 'on motion of any party interested therein'. We cannot escape the force and effect of this definite language, even though we realize that the court has said that its purpose is 'to relieve defendants from the assertion of stale demands' (*Cooper* v. *Gordon, supra*), and 'to insure proper diligence in the prosecution of asserted claims'. (*Pacific Paving Co.* v. *Vizelich,* 141 Cal. 4, p. 9 [74 Pac. 352].) While those may have been the main purposes, it does not seem improbable, since the plaintiff, as well as the defendant, is given power to move for dismissal, that other purposes also have actuated the various legislatures which have kept this section in our code in practically unchanged form for almost fifty years.

''Respondents here, prior to their appearance by answers filed in this case, and shortly after the discontinuance of railroad operation in 1933, filed a suit to quiet title against the successors in interest of the Pacific Improvement Company, and against the State of California, 'which action', they say in their brief, 'is still pending although it is understood that, as to the state, the rights of the heirs of Bonifacio Marquez shall be adjudicated in this action where really they should be adjudicated'. The only understanding that could make such a course possible calls, in our opinion, for joint consent of the parties. Such consent was never given within the three-year period, nor since, so far as we know, and, if given, has been so definitely withdrawn by proceedings noted, that it is apparent now that any rights of these heirs against the state must be adjudicated in the other pending case.

''In this case, on the facts before us, we see no course open except to order the cause remanded to the lower court, with

instructions to vacate the judgment heretofore entered, to quash any execution that may have issued thereon, and to dismiss the case.

"Accordingly, it is so ordered."

A few additional observations upon the questions involved may be pertinent.

Respondents have argued strongly that all procedural matters in this case should be governed primarily, not by any of the sections numbered 307 to 1062a, inclusive, which appear in part II of the Code of Civil Procedure and which apply to "Civil Actions", but by the rules of title VII ("Eminent Domain") of part III of the code, comprising sections 1237 to 1264, inclusive, under which this condemnation suit, "a special proceeding of a civil nature", was brought. It is contended that section 1255a governs the present situation, providing, as it does, for dismissal of a condemnation action. But it will be noted that such a dismissal is based, by the terms of that section, upon the abandonment of the condemnation suit. We do not think it has any application here (nor is the case of *Silver Lake etc. Irr. Co.* v. *Los Angeles*, 32 Cal. App. 123 [162 Pac. 432], in point), for in the case at bar the plaintiff, far from abandoning the proceedings, has secured a final judgment upon which it has rested since 1925, and now has asked, by its motion, merely for a dismissal of the action as to the defendants, who are respondents here. In *Peck* v. *Agnew*, 126 Cal. 607 [59 Pac. 125], the court held that under section 581 of the Code of Civil Procedure, subdivision 7 (practically identical with the present section 581a), providing for dismissal of an action, dismissal may be entered as to some defendants and need not be entered as to others; in other words, it need not be a dismissal of the entire action.

Section 1256 of the Code of Civil Procedure, one of the sections governing the exercise of eminent domain, reads as follows: "Rules of Practice. Except as otherwise provided in this title, the provisions of part two of this code are applicable to and constitute the rules of practice in the proceedings mentioned in this title." This language adequately supports the claim of respondents that primarily the provisions of title VII, part III, Code of Civil Procedure, govern the conduct of condemnation suits; it is also

a clear direction that when no provision is found there to meet a given situation reliance must be had upon such section or sections of the code relating to civil actions as may be applicable. Under the title "Eminent Domain" in part III, Code of Civil Procedure, we find no section providing for a dismissal in a condemnation suit except upon abandonment, but this does not mean that abandonment is in every case a prerequisite to dismissal. Where, for other reasons and upon other grounds, a dismissal is sought, sections of the code outside the title "Eminent Domain" may be invoked. *City of Bell* v. *American States W. S. Co.*, 10 Cal. App. (2d) 604 [52 Pac. (2d) 503], furnishes a recent instance. There section 583 of the Code of Civil Procedure was employed by defendant to secure a dismissal upon the ground that plaintiff had failed to bring the action to trial for more than two years after answer filed, a situation not provided for under "Eminent Domain". Similarly, in our opinion, the plaintiff in the instant case,— no section of the "Eminent Domain" title being applicable to the present situation,—is entitled to terminate this action as to these respondents under section 581a of the Code of Civil Procedure.

Therefore, our earlier order to the superior court, embodied in our original opinion, is hereby confirmed: the action is to be dismissed as to these respondents.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1936.